TAMAMI Good morning. May it please the Court, I'm Francesca Tamami, Counsel for the United States. The government has raised two issues in its appeal. The first is whether the Court of Federal Claims had jurisdiction to determine the identity of the partners of the RRNC group partnership in this partnership-level proceeding. And the second is whether the Court of Federal Claims' 40 percent valuation misstatement penalty was made inapplicable as a result of the partnership's concession of the capital gain and loss adjustments in the IRS's Notices of Adjustment. I'd like to address the first issue first. The relevant provision that confers jurisdiction here is Section 6226F of the Internal Revenue Code. Under that section, the Court has jurisdiction to determine the proper allocation of partnership items among the partners, as relevant here. The statute is longer. FRANCESCA TAMAMI But are you telling us that the only way the service can determine who the partners are is if the Court tells them? I would think all I'd have to do is push a button and it would all appear on the screen somewheres. TAMAMI Well, in this case, the IRS... In this case, all of the partners at issue were listed on RRNC group's partnership return for the year under the Court's jurisdiction, 2001. FRANCESCA TAMAMI Then why is this such a big deal? TAMAMI Well, because in this case, in this case, the government contends that the partners who were the record owners at the time that the conceded $66 million gain was recognized by the partnership, that those are not the true partners. The IRS would like to disregard those partners as the true partners and substitute the previous partners so that the gain, the SANS heirs, rather than to the trust. FRANCESCA TAMAMI And the IRS can't ask them rather than have a federal case out of naming them or somehow disclosing them? TAMAMI Well, the IRS brought all of these individuals into the proceeding. The Court of Federal Claims here allowed the individual SANS family members to be dismissed from the proceeding, saying that it didn't have jurisdiction to address whether or not they were the true partners. The result of that ruling would be that, well, now that the gain has been conceded, that gain would then be distributed to the partners remaining in the proceeding, which are solely the trust. So the government's position is that in order to allocate that gain to the real partners, the individual SANS family members, they need to remain in the proceeding. And if there's a dispute regarding who really was a partner at the time that the gain was recognized, then that's something that was within the Court's jurisdiction to decide. FRANCESCA TAMAMI Are you arguing for a blanket rule that determination of who the partners are in a partnership is always a partnership-level determination? TAMAMI It's the government's position that as a matter of law, who the partners are is always a partnership matter. We believe this is implicit under the plain language of 6226F, which says the court must determine the proper allocation of partnership items among the partners. The court cannot determine the proper allocation among the partners if it does not know who the partners are in the first instance. Moreover, as we argued in our brief, we believe this is a partnership item itself because, you know, in a partnership, the partnership is not the taxpayer. The partnership is solely a flow-through entity. The real parties and interests are the partners. It makes the most sense in a partnership-level proceeding determining the tax items of a partnership to bring the real parties and interests into the proceeding at the beginning, at the beginning of the case. The court needs to know who the real partners are. You need to have those people in the case because they are the ones that will report the very partnership items being determined in the partnership proceeding. The notion that they would be determined later, after the partnership items have been adjusted, when there's no longer an opportunity to have the real parties and interests be involved in determining those partnership items makes, in the government's view, no sense. So, you would say that there's no need to do an analysis of whether or not that partnership determination could affect allocation? That's correct. Although, in this case, it does affect the allocation. The partnership item at issue, as I mentioned, is the conceded $66 million of gain. Under 6226, the court has jurisdiction to determine the proper allocation of that gain, the statute says, among the in this regard, to a specific subset of partners that were in place at a specific time during the tax year. Rather, 6226C says that each person who was a partner in such partnership at any time during such year shall be treated as a party to the partnership proceeding. 6231A2 contains a broad definition of a partner as not only anyone who was a member in the partnership, is affected in whole or in part, directly or indirectly, by partnership items. So, the real problem, I think I heard you say in passing, is that the service missed the statute of limitations in terms of going against the individuals and want to plug that gap, correct their error, by now proceeding against the individuals through the partnership. Well, the IRS, the statute of limitations has passed on issuing a separate nonpartnership statutory notice of deficiency to these individuals. Precisely. Otherwise, wouldn't that have been the direct, straightforward way of wrapping up these various issues? So, I want the question of what sort of tax shelter this is, or whatever, is resolved. Well, let's just think that through. That type of nonpartnership statutory notice of deficiency is issued, for example, if, let's say, that individual partner also claimed the theft loss deduction, or a charitable contribution deduction that was disallowed. That is something that is completely unrelated to the partnership. The statute of limitations is not suspended at all by what's going on at the partnership level proceeding. So, let's say that the IRS were to issue a notice of deficiency, disallowing various nonpartnership items, and also saying, by the way, we believe that you are a partner in this partnership and that you must take into account those partnership items. Well, that proceeding might proceed in the tax court. And let's say the tax court rules that the person actually is a partner. In a tax court proceeding, the tax court has to determine the taxpayer's entire deficiency for the tax year. So, now you have a situation where you have a person who is determined to be a partner, but the tax court has no way of knowing what is the proper amount of income or loss that that person should realize from their partnership interest. That's being litigated separately in this partnership proceeding. But that's also, perhaps, assuming that there's no question of the statute of limitations so that these other issues arise. It's not automatic, is it? Or perhaps one would, perhaps the service hopes it would be, that if this disclosure request is resolved in accordance with your request, that the statute is told against the individual. The statute of limitations is not told in the separate notice of deficiency proceeding based on anything happening in the partnership proceeding. The tax court, in theory, could hold its own proceeding in abeyance while the partnership items are being determined so it knows how much income to attribute to this partner. But that's exactly what the TEFRA proceeding sought to eliminate. It sought to eliminate these duplicate fractured proceedings where partnership items are being determined over here in one proceeding and the status of the partner is being determined over here. Moreover, let's say that this person is determined to be a partner. Well, now how does that person enter the partnership proceeding? And what if the partnership proceeding is over and they've now forgone their opportunity to litigate a case where they are the party in interest because they are the partner? They'll be bound by the result of a partnership proceeding in which they were not a party. In this case, if the trusts are shams, if they were determined to be shams, how would that impact the allocation? If the trusts were determined to be shams, they would be disregarded completely and there would be various ways the court could reallocate the income. Assuming the individual SANS members are dismissed from the proceeding, it could reallocate all of the income to the sole remaining partner, which would be RRNC Corp., which held a 0.1 percent interest. Or the court could, because under 6226C, the court is supposed to have jurisdiction over anyone who was a partner during the year, the court should be able to reallocate the income to the individual SANS heirs because they were partners of record during the year. But what if there was an allocation? Assuming there was an allocation and then later they were determined to be shams, it would just pass through to the individual heirs that were affiliated with that trust, correct? I'm not exactly sure. In terms of, I mean, a determination would have to be made. It could either be all reallocated to the one remaining partner. The question whether the relationship between the trust and the individuals is such that disregarding the trust is tantamount to recognizing that individual as a partner, I'm not exactly sure. It's not the same as disregarding, like piercing the corporate veil, necessarily. Okay. Why don't you move to the next issue? The 40 percent penalty issue. There appears to be no real question in the appeal that Section 465 does not actually support the capital gain and loss adjustments that were conceded by the partnership. Their primary contention in the appeal is that the penalty doesn't apply when a taxpayer concedes, even if no grounds are specified. However, nothing in the code suggests that the penalty works this way. Section 6662 says that the penalty shall apply if an underpayment is attributable to a basis misstatement. The 20 percent penalty is not at issue, right? It's the question of whether it should be doubled. The 20 percent penalty is at issue in the partnership's appeal. It's not at issue in the government's appeal. Okay. If no grounds have been established for the underpayment, then the court must adjudicate the government's claim that the basis misstatement is – that the underpayment is due to a basis misstatement. This was the result suggested by this court in the Keener case. This court in DICTA rejected the notion that a taxpayer could escape tax-motivated interest under former Section 6621, where there were multiple grounds for disallowing the claim's tax benefits, some of which were tax-motivated and others were not. What's the point of the concession, then? What's the motive to concede if there's no benefit from it? From the partnership's perspective? Yes. Are you asking why they did it in this particular case or why anyone would concede? Why anyone would concede if there's no possible benefit from it. Well, first of all, in this particular context, in dealing with front-of-box shelters, there was an opportunity – there was a settlement initiative that was put out by the IRS before this case was litigated wherein persons who had participated in this tax shelter could concede the tax and pay the tax and either get out of penalties altogether or only pay the 20 percent penalty based on certain factors. So for this particular tax shelter, taxpayers had an opportunity to make a concession and either escape penalties altogether or have a lower penalty. The partnership here chose not to pursue that option. There may be no incentive to concede other than saving litigation costs if you're going to face a penalty, but I think when you've gotten this far down along in a proceeding where the government – the concession here didn't come until two years after the suit was filed when the parties have – both sides have expended significant litigation costs. Here, I think on the flip side, the government is basically forced to accept a concession that went beyond the terms of the settlement initiative that they offered by the court forcing the government to accept the tax without any penalties. So I think the equities lie in the government's favor here. But it wasn't without any penalties. They still looked at the 20 percent negligence penalty, correct? The court upheld that. That's correct. The court did sustain the 20 percent penalty. Of course, that's on appeal in the partnership's appeal. Now, if we agree with you on the 40 percent penalty, then the cross-appeal becomes moot, correct? I believe so, except that the court has not – some of the same defenses they're raising at the 20 percent penalty stage would apply to the 40 percent penalty, the reasonable causing good faith defense. Now, the court never considered that penalty in light of the basis misstatement issues that are involved with the 40 percent. So I believe that all of those issues would have to be remanded to the Court of Federal Claims, but basically the 20 percent penalty would be off the table if the 40 percent penalty were to apply. Okay. Would you like to save your rebuttal time? I'll save my remaining time. Thank you. Thank you. Mr. Kellerman? Good morning. I'd like to start with the jurisdictional issue and I'd like to respond to some of the court's questions that were posed to government counsel. First, Judge O'Malley, you asked about the allocations and what would happen if the cruts were disregarded. Down below, the IRS said, and this is a quote from page 10 of document number 24, if the IRS is correct that the crut transactions must be disregarded, our RRM&C group will need to And that was their consistent position down below. It's only now that we're here on appeal that there's an after-the-fact rationalization that the government is arguing that these amounts could be reallocated in some other manner. That they were consistent down below that if any one of the cruts was disregarded, it would be that SANS that made the contribution. But even if we held the government to that statement, it still impacts the allocation, does it not? No, it doesn't. I don't agree with that at all. Each one of the SANS family members transferred 100% of their partnership interest to each of their respective cruts. If you disregard any one of the cruts, all that is going to happen under the government's own theory of the case, and what they stated below, is that share of partnership items is going to be allocated to that SANS family member. It doesn't change the percentage, but it still changes who it's allocated to, does it not? That's correct. And that's going to be true in any partnership. And I'd like to go to Judge Newman's question with that. Why is this a big deal? Well, it's a big deal because the IRS is trying to Some partnerships have hundreds or thousands of partners. Transfers are going to happen all the time. There might be gifts of partnership interest. Partners may die and leave their partnership interest to an estate. There could be a will contest, right? Or there could be a transfer from partner number 353 to somebody else, and there could be a dispute about whether that transfer really took place. Maybe the buyer never actually paid for the partnership interest. The IRS is arguing, if true, and the blanket rule they're asking for, is that those disputes are always going to have to be determined in a partnership-level proceeding involving the partnership, all of the other partners, and the IRS. I want to point the court to page 20 of the government's reply brief, because in that brief, the government flat-out concedes that's not the right rule. They recognize that partnerships don't really do that. They don't police and scrutinize the makeup of their partners. Are you asking for a blanket rule the other way? I'm asking for a ruling in this case, but I think the right answer is, as the tax court found, that the identity of a partner is not a partnership item unless it changes the allocations of all of the partners. And blow-nine is an atypical case, because there you had a question about a partner who's in negotiations with the partnership about whether he ever became a partner. If he was a partner, then he'd get 1% or 2% or whatever percentage of the partnership interest it was, and that would change the allocations to all of the other partners. And there also, in that case, obviously the information would be available to the partnership. The partnership was on one side of the negotiation. The purported partner was on the other. But in this case, let's look at what the partnership would have to look at, and this is also an important inquiry, as this court stated in ProTorenco. You have to look at the practicalities of the situation. What is the partnership going to know? Are we looking at facts about the partners, or are we looking at facts about the partnership? And in this case, the government can't point to a single fact about the partnership that would have to be determined to assess whether the cuts were valid or whether the transfers to the cuts were valid. What about the Tenth Circuit Katz case or our Keener case? Well, the Keener case didn't address the identity of the partner at all, so I don't see how that's relevant. I think the Court of Federal Claims correctly said in the Keener case, which I see as relevant to the 40% penalty issue that the government has raised. The Katz case is, frankly, it's a weird case. I've read that paragraph in Katz that talks about this issue five times, and I don't understand exactly how the court got to where it got. I think the dissent recognizes that. The dissent says, you know, under the standard that the majority is applying, it would seem to be that the identity of a partner is not a partnership item, and that's what the dissent held. I will say that in Katz there wasn't a transferred issue, and the fact that the bankruptcy estate was a partner in the partnership wasn't disputed. Here the government is disputing whether the Kratz ever were a partner, and the government is disputing whether the bankruptcy or whether the Kratz were in fact real. And so to just close the loop on that, that's going to require the Court of Federal Claims to look at the intent of the transfers and the transferees. It's going to have to look at the benefits and burdens of ownership of the partnership interest. It's going to have to look to the intent of the trustees or the charitable remainder beneficiary of the Kratz. I mean, these things are just so far removed from the partnership that it's— But doesn't the court, in order to determine its jurisdiction under your theory, still have to do a fairly detailed analysis? Because in order to say that it won't impact reallocation, the court has to conclude that anything allocated to the Kratz would automatically flow to the heirs, would it not? Well, that's an easy call in this case. The government never disputed that. That's their entire theory of the case. They're saying the Kratz are shams. We should give the partnership share of those items to the shams. I mean, so it was never disputed below, and that's why it was an easy finding for the court. It's only now that the government, as I said, is trying to come up with some after-the-fact rationalization. So I just want to now go back to your question again, Judge Newman, about why this is a big deal. It's not just the partnerships are going to have to police the makeup of their partners, which is just crazy. I mean, partners aren't even required to report to partnerships when they transfer their partnership interest. How are the partnerships even going to know? But the government is saying it's required that they have to figure out before they file their tax returns who their real partners are. So go to that will context. The partnership is going to have to figure out who really owns the partnership interest in that will context. But in this case, there's a very close relationship between the shams and the Kratz, so there's not – that information is readily available. There isn't the problem that you're trying to manufacture, is there? Well, there is, and I'll point out also that that's going to make a difference in the Hangen-Grigoracci cases in the tax court. Those cases were all closely held businesses, and again, the tax court held that the identity of a partner is not a partnership item. But here, it's not just the shams. The shams gave their partnership interest to the Kratz. The Kratz has a charitable remainder beneficiary, and here it was a foundation that the IRS respected and gave a ruling on. It said it's a valid charitable organization. And the foundation had its trustees, people that – a prominent attorney up in Rochester, New York, and two CPAs that are completely unrelated to the shams. So they'd have to come into the proceeding as well and testify, I would assume, about what their intentions were. And it's not just the partnerships under the IRS's theory would have to police the makeup of their partners. But any challenge to who owns a partnership interest would always have to be resolved in a partnership tax proceeding. Let's go back to the will contest or the gift or the ineffective transfer. You have two partners disputing, or partner A and the person who bought a partnership interest disputing who actually owns the partnership interest. That's going to have to be raised in a tax case. Somehow or another, they're going to have to get into federal court, bring in the IRS, bring in the partnership, and bring in all the other partners to determine who actually owns that partnership interest because, according to the government, that's a partnership item. So this is going to apply not just when the government challenges it, but whenever there's a challenge to who owns a partnership interest. It would have to be resolved in a partnership-level proceeding, and that's just wrong. A couple other points to make here. I will address the Keener case because the Keener case – now I think I see maybe where Judge Rader was headed. The Keener case did hold that the statute of limitations was a partnership item, as other courts have held, because it does affect the partnership as a whole in a thumbs-up or thumbs-down manner. But it did rely on the language in the regulation that the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc. would be impacted by the statute of limitations in that thumbs-up or thumbs-down manner. That is not true here because, as we've discussed, the Court of Federal Claims expressly found that whether each of the CRUTS was a real entity or whether each of the SAMs transfers to the CRUTS was valid would not have any effect on the partnership or any other partner, and that was never disputed below. I'd also like to point the Court to the Gregoracci case. In that case, the Court looked at that exact legal or factual determination language in the regulation and held that it did not implicate the identity of a partner. So here you've got a statute that expressly defines a partnership item as any item required to be taken into account for the partnership's tax levy or under any provision of Subtitle A to the extent regulations prescribed by the Secretary provide that such item is more appropriately determined at the partnership level than at the partner level. The IRS concedes that its regulation, and this is a quote from its brief, does not specifically state whether the identity of a partnership's partners is a partnership item. That should be enough to end the matter, but it does. It addresses Keener and relies on Keener in these statute of limitations cases to then go to that legal and factual determinations language in the regulation. It tries to hang its hat on that and says, well, there's my jurisdictional hook. So who gets to participate in the partnership proceeding then if we don't know who the partners are? It's any partner who – it's anybody whose tax liability is either directly or indirectly affected by the partnership proceeding, and it would be the partners of record. Or presumably it would be the heirs in the case of a trust, correct? In a case of a – In a case of a trust where there's – It would depend upon the type of trust. Some trusts are complicated trusts, so they pay their own taxes. Some are pass-through trusts, so you would look through the beneficiary. So are you saying that the jurisdictional determination should turn on whether who the partners are affects the allocation in that particular case, and then there's an underlying factual finding that has to be made with respect to that issue? The partners are who the partners of record are. That's how partnerships prepare the returns. They get information from the partners if there's a transfer. It may be reported to the partnership. It may not. Partnerships rely on that information to prepare their returns every day. That is just how it's done. That is why this is a radical change from the way every partnership operates. What the government is proposing is that partnerships are forevermore going to have to police who their partners really are. And somehow in the context of a partnership proceeding, I don't even understand how we get into federal court unless the IRS wants to raise a challenge, that the partnership is going to be required to resolve these disputes among candidates for a partnership interest. And the government's brief doesn't even mention how that's supposed to be resolved. Well, I was going to say I don't see that as part of the government's brief. It seems that in this case, which let's accept was a particularly, I'll use the word abusive, tax shelter. At least the Court of Federal Claims said that it should have been apparent that there's something inappropriate about these proceedings as to whether, in fact, there is recourse to the partners eventually to pay the deficiency and the penalty. That's what it's all about, isn't it? That is what it's all about. And as we pointed out in our brief, we invited the IRS to issue statutory notices of deficiency to the partners, even on a protective basis, which it traditionally does. And for whatever reason that I can't explain, it didn't do so in this case. I would assume that what will happen after this proceeding is over, if the court rules that the identity of a partner is not a partnership item, the IRS will issue what we call an affected item notice of deficiency to each of the partners. And it will argue that the identity of a partner is an affected item. The statute of limitations on affected items are told for one year after the completion of the TEFR proceeding. So the government will issue the affected item status notice and argue that the statute of limitations is still open to assess directly at the partner level on that basis. But that document hasn't been issued yet. It's not in front of the court. But I do want to respond to the characterization of the crux of the shams. The government made the same argument down below to the Court of Federal Claims. And I'll give you a quote because the Court of Federal Claims, in response to those same types of arguments, said that those allegations appear to assume the existence of some illegality. However, there has never been a determination regarding any allegations that the transfers of partnership interest in group from the Sands to the Cruts were sham transactions. End quote. And that's from the Court of Federal Claims Order on the Motion to Reconsider at page 10. So there's never been any determination by the court that these Cruts transactions were abusive. Right. Well, that's a little bit circular because the IRS asked for that determination. Did they not? I mean, they're assuming that, but that's because they're asking for the court to make that determination at the partnership level. But I don't think that should color the court's determination as to whether it has jurisdiction or not. I mean, that's the ultimate fact that they want to prove. Before your time runs out, let's turn to the 40 percent. Thank you. Thank you. Well, I think that the 40 percent penalty is, again, as the Court of Federal Claims determined, something that should not apply in this case. The government's position would require a court to adjudicate every ground that could possibly support evaluation of the statement penalty until all possible grounds would be exhausted. You can see that the 465 doesn't have anything to do with this, right? Well, it does because it's one of the grounds that the government listed in the FPAW, and that's the ground that we conceded upon. But it really wouldn't make a difference because the court in a partnership level proceeding has jurisdiction to consider any grounds. I mean, it's open jurisdictionally to anything that could affect the partnership. We could have conceded on something that wasn't even in the FPAW. Well, is there anything in statute or regulations that says whenever a concession occurs that the penalties are off the table? There's – in the litigation guideline memorandum that we supplied the court in the supplemental briefing, yes, that's exactly how the IRS interpreted this provision. It's funny because they question the Todd case, and they question the legislative history in their briefs. But you read the litigation guideline memorandum, which is the instructional manual for all IRS attorneys, and there it says you should accept concessions because it's within the court's discretion to manage a stocket.  We're trying to ease the court's backlog, and so the IRS interprets it that way. And it's now that I'm brief that the government's lawyers are arguing it should be interpreted some other way. There's – and then they came out with a chief counsel notice in 2011 and, again, reaffirmed that that's the appropriate framework. But all they did is now they gave direction to their attorneys to say you shouldn't accept the concession or you should resist the concession. But here they accepted the concession. The court appropriately accepted it to manage it at stocket. And if we didn't have that concession, the government raised five different theories in the FPA. As the court – as the case proceeded, they came up with a couple of new theories. And the court would have to look at each and every theory until it determined that none of them could possibly support the devaluation. Even if this IRS manual was in the record at the time of the proceedings below, are you arguing that somehow whatever they say in their manual operates as an estoppel against the IRS or defines for us what the law is? No, I'm not saying that, Your Honor. I'm just saying that here you have the government trying to argue both sides. It's giving direction to all of its attorneys. This is the way we interpret this provision. And now we are here in this case, and they're asking the court to apply it a different way. I can't tell how much time I have left. Your time has expired, Mr. Cullinan. Thank you. I appreciate the court's time. Ms. Tamami? I'd like to first address my opposing counsel's argument that the government's position would require partnerships to police who their partners are. First of all, that entire theory raised by the partnership falls under the umbrella of whether or not the identity of the partners is a partnership item. The government's primary argument is that jurisdiction to determine the identity exists under the plain language of 6226F, proper allocation among the partners, that the court does not even need to address whether or not identity of the partners is a partnership item. Therefore, that issue really is a red herring. Second of all, our position regarding partnership item would not require partnerships to police who their partners are. We're not talking about imposing a new oversight or reporting requirement on partnerships. The question whether something is a partnership item only has relevance in the TEFRA context, in the context of a unified partnership tax audit and tax court proceeding. And the inquiry is, is this something more appropriately determined in the partnership level or at the partner level? We are saying because the partners are the real parties in interest, they are the ones to report the partnership items, it is more appropriate to determine partner status at the partnership level. So our position has no effect on whether or not partners need to police who their partners are. I will note, however, that treasury regulations actually do require partnerships to know, for purposes of issuing schedule Ks, whether or not partnership interests are held by a nominee on behalf of some other person. So that reporting requirement that my opposing counsel is so worried about actually already exists. I'd also like to point out that under section 6226C, the court does have jurisdiction to determine whether a person is a partner if there is someone who wants to participate in the partnership proceeding. Statute says that any person who was a partner during the year can participate, and the court shall allow each such person to participate. So the anomaly created by the Court of Federal Claims' opinion here would be that if a partner says, I want to participate in the partnership proceeding, I was a partner, the court can adjudicate that claim. But the court apparently cannot adjudicate the government's claim that a person was not the real partner, or that a person who is not in the proceeding needs to be brought in because they are the real partner. Isn't there a distinction between adjudicating whether or not, for instance, a partner of record is a sham, and adjudicating whether or not there's an extra partner out there that should have been included? That would turn on the individual facts of the case. And if you look at the Oceanic Leasing case that we cited in our brief, the site was TC Memo 1996-458, there the tax court ruled on a person's claim that he was not a partner and should be dismissed from the proceeding. And if you look at the opinion, the facts were different, but the court got into a heavy level of facts related solely to that partner. Because ultimately that would affect the allocation. Whether you divide it 10 ways or 9 ways affects the allocation, correct? That's right. And I think in that particular case, that person did not want to be a partner because he did not want to be bound by a motion for entry of decision that was agreed to among the other partners in the IRS. So he was basically trying to get out of it. But you're correct. And I guess I wanted to also seize on, at one point my opposing counsel was asked, well, who are the partners? And he said emphatically, the partners are the partners of record. In this case, both the SANS heirs and the Cruts were partners of record during 2001, which is the year under the court's jurisdiction. Under Section 6226, the court has jurisdiction over any partnership item during the tax year with respect to which the AFPA was issued, so the entire 2001 tax year, and the court has jurisdiction over any person who was a partner during the tax year. So it clearly follows that the court has jurisdiction to reallocate the gain from the sale of the consolation stock from one partner of record during that year to another partner of record during that year. We're not talking about Hanger-Grigoracci, where it was an issue of reallocating income to someone who was never affiliated with the partnership. These are partners of record here. Do you have any final thought for us, Ms. Damomi? I just wanted to make one comment about the litigation guideline memorandum that the partnerships are now heavily relying on. That memorandum was issued in 1992. I think it's fair to say that no one was aware of that memorandum until counsel discovered it and sent it as a 28-J letter to this court. In any event, if you look at the guideline memorandum, first of all, it is not an official statement of the IRS's position on the law. It was advice for how to handle docketed tax court cases. Also, if you look at the memorandum, the IRS expressly agrees with the position of the Second Circuit in the Iram case. The Second Circuit in the Iram case is one of the six circuits that have declined to follow the Todd case from the Fifth Circuit, which is what the CFC relied on here. Also, this court cited with approval the Iram case in the Keener case, and that portion is the end of the opinion where it dismissed the taxpayer's arguments seeking to get out of the tax-motivated interest. Thank you, Ms. Tamami. Thank you.